**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 18, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 18, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 100953-4 |
| Respondent, | ) | |
| v. | ) | En Banc |
| ANDREW WESLEY BERTRAND, | ) | |
| Petitioner. | ) | Filed: Filed: April 18, 2024 |

YU, J. — In this case, we take the opportunity to clarify the analysis that applies where a defendant asserts ineffective assistance of counsel based on counsel's failure to propose a lesser included offense instruction. Such claims are subject to the two-pronged test laid out in *Strickland v. Washington*, which requires the defendant to show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We further clarify that although our precedent recognizes it is "difficult" to satisfy *Strickland* in this context, there is no per se

rule preventing a defendant from doing so. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 848, 280 P.3d 1102 (2012). Instead, the difficulty of satisfying *Strickland* in this context arises from the "'"presumption of effective assistance"'" inherent in the *Strickland* test. *State v. Grier*, 171 Wn.2d 17, 38, 246 P.3d 1260 (2011) (quoting *State v. Hassan*, 151 Wn. App. 209, 221 n.6, 211 P.3d 441 (2009)).

Appellant Andrew Bertrand was convicted of two counts of first degree child molestation. He moved for a new trial, arguing counsel was ineffective for failing to propose lesser included offense instructions on fourth degree assault. The trial court denied Bertrand's motion, ruling that although counsel was deficient for purposes of *Strickland*'s first prong, Bertrand could not show prejudice as required by *Strickland*'s second prong. The trial court ruled that because the State had met its burden of proving each element of first degree child molestation and the jury convicted Bertrand of those charges, he could not show prejudice. We granted direct review to clarify the applicable analysis.

We reaffirm that *Strickland* provides the proper analytical framework. Both prongs of the *Strickland* test require the defendant to overcome "a strong presumption that the counsel [was] effective." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). First, the deficient performance prong requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance" to safeguard "the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. Second, the prejudice prong requires the defendant to overcome a "strong presumption of reliability" in the jury's verdict by "showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696. There is no rule that failure to propose a lesser included instruction is per se prejudicial.

*Strickland*'s presumptions can make it difficult for a defendant to prevail in an ineffective assistance claim based on counsel's failure to propose lesser included offense instructions. Indeed, some confusion has arisen as to whether such a claim can *ever* succeed in a case where sufficient evidence supports the jury's verdict. We recognize that our prior cases have not been entirely clear on this point. Therefore, we now clarify that our precedent does *not* categorically preclude such claims, nor can they be reduced to a sufficiency of the evidence test.

The *Strickland* test is not subject to "mechanical application" because the "'ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *Strickland*, 466 U.S. at 696). Thus, we generally cannot apply "per se rules" to ineffective assistance claims. *State v. Cienfuegos*, 144 Wn.2d 222, 229, 25 P.3d 1011 (2001). Nevertheless, the trial court's ruling in this case suggests a per se rule that a defendant *cannot* show prejudice if there is

3

sufficient evidence supporting the jury's verdict. *Strickland*'s prejudice prong does not impose a sufficiency-of-the evidence test. Instead, each claim must be analyzed on "a case by case basis" pursuant to the fact-intensive inquiry *Strickland* requires. *Id.* To prevail, the defendant must demonstrate "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In this case, Bertrand cannot show he was prejudiced because even if counsel had requested the lesser included instructions, the instructions would have been properly denied because there were no facts to support instructions on fourth degree assault. We therefore affirm the trial court in result on this issue. We remand the remaining issues to the Court of Appeals for further proceedings, without prejudice to either party.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A. Factual background and jury trial

C.A. and S.T. met Bertrand when he dated their mothers. The girls were around the same age as Bertrand's own daughter and all three girls became friends. In January 2021, S.T. told the other two girls that Bertrand had inappropriately touched her. After hearing S.T.'s disclosure, C.A. told the girls that Bertrand had also inappropriately touched her. The following week, C.A.'s and S.T.'s parents

reported Bertrand to law enforcement. Bertrand was ultimately charged with two counts of first degree child molestation, and the case proceeded to a jury trial.

C.A. testified she had met Bertrand when she was 3 years old, and he began "[s]exually touch[ing] parts of [her] body against [her] will" when she was 3 or 4 years old. 1 Verbatim Rep. of Digitally-Recorded Proc. (VRP) (Dec. 9, 2021) at 341, 345. C.A. testified the unwanted touching continued until she was 10 years old, and Bertrand had touched her in total "[t]en or more" times. *Id.* at 345. Bertrand would start by scratching her back and would then "put his hand down [her] pants or . . . up [her] shirt." *Id*. at 342. The last time this occurred, C.A. was watching a movie at Bertrand's house with Bertrand and his daughter. When Bertrand's daughter left the room, Bertrand began to scratch C.A.'s back and "put his hand down [her] pants . . . [o]nto [her] butt." *Id*. at 344. Bertrand also touched her upper back and "by [her] breasts." *Id*.

S.T. testified she met Bertrand when she was eight years old, and he had molested her at least 10 times. She testified Bertrand would often attempt to cuddle with her, then begin rubbing her lower back and touching "the front of [her] chest" while they watched television on the couch together. *Id*. at 390. Although S.T. "thought it was an accident at first," S.T. came to believe that it was intentional because Bertrand continued touching her, concentrating "more on

[S.T.'s] chest" than other areas, in a way that made her feel "[u]ncomfortable." *Id.* at 390-91.

In closing, defense counsel argued the State had not met its burden of proof beyond a reasonable doubt because C.A.'s and S.T.'s testimony was unreliable, highlighting the "lack of evidence" and "inconsistenc[ies]" in the case. 2 VRP (Dec. 14, 2021) at 604. Defense counsel argued the jury could not "infer from the evidence" that the alleged molestations were sexual or unlawful, equating Bertrand's interactions with C.A. and S.T. to children "playing with [their] dad" by "crawling over" and "wrestling with" him. *Id*. at 588. The jury found Bertrand guilty of both charges.

B.      Motion for a new trial

Before sentencing, Bertrand retained new counsel and filed a CrR 7.5 motion for a new trial. Among other claims, Bertrand argued that his trial counsel was ineffective for failing to request lesser included offense instructions on fourth degree assault pursuant to *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).[1] To show deficient performance, Bertrand argued that trial counsel did not make a strategic decision by failing to pursue the fourth degree assault instructions. In support of his motion, Bertrand filed an affidavit from trial counsel, in which

---

[1] *Stevens* concerned second degree child molestation, but it applies to the first degree child molestation charges here because the only relevant difference between first and second degree child molestation is the age of the child. *See* RCW 9A.44.083(1), .086(1).

counsel stated that his "overall trial strategy was to weaken the claims made by C.A. and S.T. as unreliable on the whole" as well as arguing, "in part, that the State's testimony failed to prove that any touching rose to the definition of sexual contact." CP at 153, 156 (internal quotation marks omitted). Trial counsel further stated that he did not know fourth degree assault was a lesser included offense of child molestation, that the choice to not pursue the lesser included offense was not strategic, and that he did not discuss the lesser included offense with Bertrand. *Id*. at 155-56.

In an effort to show prejudice, Bertrand relied on the Ninth Circuit Court of Appeals' decision in *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015). In accordance with the Ninth Circuit's analysis on *Strickland*'s second prong, Bertrand argued that he needed to show only a "reasonable probability" that if presented with a lesser included offense instruction, a jury may have found him guilty of fourth degree assault instead of child molestation. CP at 142. He argued it was reasonably probable that a jury could have found the touchings were unwanted but nonsexual and, therefore, would have convicted him only of fourth degree assault. This was contrary to his argument at trial that the touchings were entirely lawful, neither unwanted nor sexual.

The State opposed Bertrand's motion, arguing that he could not show deficient performance because his trial counsel had strategically pursued an "all or

7

nothing theory" of the case. *Id.* at 193. The State further contended that Bertrand was precluded from showing prejudice by this court's opinion in *Grier*. In the State's view, *Grier* held that "a [d]efendant *cannot* [show] prejudice" from counsel's failure to request a lesser included offense instruction "if the [d]efendant is convicted." CP at 193 (emphasis added). The State further argued that Washington courts were bound by *Grier*, and the Ninth Circuit's opinion in *Crace* could not overturn any of this court's opinions. Bertrand countered with the proposition that *Crace* had "overruled" this court's decision in *Grier* regarding prejudice. 2 VRP (Feb. 16, 2022) at 678-79.

The trial court denied Bertrand's motion. As to the first *Strickland* prong, the trial court ruled that Bertrand's trial counsel was deficient, in part, because he failed "to know the law." 2 VRP (Mar. 2, 2022) at 723-24.

However, as to the second *Strickland* prong, the trial court determined that Bertrand could not show prejudice "based upon the . . . *Grier* case," determining that even with "defective" performance by counsel, prejudice was "a non-issue." *Id.* at 734. The trial court also noted that because trial counsel had "emphasized the lack of sexual gratification" in closing arguments, the jury "still would have had to grapple with this issue and decide whether the State had proven the element of sexual contact beyond a reasonable doubt," regardless of whether the fourth degree assault instructions were given. *Id.* at 724. Therefore, the trial court

8

concluded that the instructions "would not have changed the outcome of [Bertrand's] trial" and did not "undermine the Court's confidence in the two guilty verdicts." *Id.*

Bertrand was subsequently sentenced within the standard range on each count. We granted direct review of the trial court's ruling on the lesser included offense instruction issue. We now seek to clarify any confusion that may have arisen from our prior opinions and reaffirm our reliance on *Strickland* for evaluating ineffective assistance of counsel claims in this context.

ISSUE

Was Bertrand's trial counsel ineffective for failing to propose lesser included offense instructions, such that Bertrand is entitled to a new trial?

ANALYSIS

*Strickland*'s two-pronged test governs our analysis. Criminal defendants are guaranteed the right to effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. This court has expressly adopted *Strickland*'s two-

pronged test. *State v. Bowerman,* 115 Wn.2d 794, 808, 802 P.2d 116 (1990); *Cienfuegos*, 144 Wn.2d at 226. Failure to show either prong "defeats" the claim. *Strickland,* 466 U.S. at 700.

Performance is deficient if "it [falls] below an objective standard of reasonableness." *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). Defense counsel's performance is not deficient if it is a "legitimate trial strategy or tactic[]." *Kyllo*, 166 Wn.2d at 863. This court engages in "a strong presumption that defense counsel's performance was reasonable." *Id.* at 862.

The defendant is prejudiced when "there is a reasonable probability, that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Id.* The "reasonable probability" standard is "lower than a preponderance standard." *Estes*, 188 Wn.2d at 458. However, the defendant must "affirmatively prove prejudice" by showing more than a "'conceivable effect on the outcome.'" *Id.* (internal quotation marks omitted) (quoting *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). Prejudice exists when there is "a probability sufficient to undermine [the court's] confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the *Strickland* prejudice inquiry, the ultimate "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. When reviewing prejudice, this

10

court considers the "totality of the evidence." *Id.* Additionally, this court must "presume . . . that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Id.* at 694-95.

To determine whether Bertrand is entitled to a new trial, we must consider the general standards for ineffective assistance claims, as applied to counsel's failure to request lesser included offense instructions. As noted above, *Strickland* creates a two-pronged test, which this court has adopted for ineffective assistance claims. Additionally, we have "reaffirm[ed] our adherence to *Strickland*" for claims based on counsel's failure to propose lesser included offense instructions. *Grier*, 171 Wn.2d at 32. To prevail on such a claim, the defendant must show that they would have been "entitled to the instruction if it had been offered." *Cienfuegos*, 144 Wn.2d at 227.

Today, we again reaffirm our adherence to *Strickland* and provide additional guidance and clarification on the analysis that applies in this context. Applying this analysis to Bertrand's claim, we affirm the trial court in result.

A.     Deficient performance based on counsel's failure to request lesser included offense instructions

First, to satisfy *Strickland*'s deficient performance prong, a defendant must show "'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Thomas*,

11

109 Wn.2d 222, 225, 743 P.2d 816 (1987) (quoting *Strickland*, 466 U.S. at 687).

The court's "scrutiny of counsel's performance is highly deferential." *Id.* at 226.

This deference to defense counsel is important in all cases, including where

counsel fails to propose a lesser included offense instruction.

To establish deficient performance, a defendant must show that counsel's

actions "'fell below an objective standard of reasonableness based on consideration

of all the circumstances.'" *Vazquez*, 198 Wn.2d at 247-48 (quoting *McFarland*,

127 Wn.2d at 334-35). The defendant must overcome "a strong presumption that

counsel's performance was reasonable," and the court must make "every effort . . .

to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *Kyllo*, 166 Wn.2d at 862; *Strickland*, 466 U.S. at 689.

This is particularly true when counsel's alleged error is the failure to request

lesser included offense instructions. Lesser included offense instructions are

governed by "the two-pronged *Workman*[2] test: '(1) each of the elements of the

lesser offense is a necessary element of the offense charged (legal prong) and

(2) evidence in the case supports an inference that the lesser crime was committed

(factual prong).'" *State v. Avington*, 2 Wn.3d 245, 258, 536 P.3d 161 (2023)

(quoting *State v. Coryell*, 197 Wn.2d 397, 400, 483 P.3d 98 (2021)). Although

---

[2] *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

such instructions are important to "protect procedural fairness and substantial justice for the accused," they may also carry significant *risks* for the accused. *Coryell*, 197 Wn.2d at 412. Because of this, the decision to request a lesser included offense instruction implicates "the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.

Lesser included offense instructions are important because if a defendant is charged with only one crime, the jury must choose between two harsh options: either convict the defendant as charged or allow them to go free. *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015). This can "create a risk that the jury will convict the defendant despite having reasonable doubts." *Id.* A lesser included offense instruction provides a third option, allowing the jury to reach a "compromise verdict" by convicting the defendant on a less serious offense than the one charged by the State. *Grier*, 171 Wn.2d at 39.

However, the availability of a compromise verdict is *not* always beneficial to the defendant. For instance, defense counsel, in consultation with the defendant, may legitimately pursue a strategy of asserting the defendant's complete innocence. In such a case, a lesser included offense instruction might actually "weaken[ ] the defendant's claim" by suggesting that they are guilty of *some* offense, even if they are not guilty of the offense charged by the State. *Id.* at 38. Thus, defense counsel might reasonably choose to pursue an "all or nothing

strategy," requiring the jury to either convict the defendant as charged or acquit the defendant entirely, without providing the option of a compromise verdict on a lesser included offense. *Id.*

Due to the significant risks of pursuing an all or nothing strategy, "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and [their] counsel." *Id.* at 32. However, the decision "ultimately rests with [trial] counsel," and if counsel's decision "'can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *Id.* at 32-33 (quoting *Kyllo*, 166 Wn.2d at 863). Thus, "[t]he inclusion or exclusion of lesser included offense instructions is a tactical decision for which defense attorneys require significant latitude." *Id.* at 39.

Nevertheless, in this case, the trial court ruled that Bertrand had met his burden to prove deficient performance. The trial court's ruling is supported by the affidavit of Bertrand's trial counsel, where counsel acknowledges that they did not know fourth degree assault could be a lesser included offense of child molestation in accordance with *Stevens*, 158 Wn.2d 304. CP at 155-56.

It is well established that "[t]he duty to provide effective assistance includes the duty to research relevant statutes." *Estes*, 188 Wn.2d at 460. Therefore, "[w]hen 'an attorney unreasonably fails to research or apply relevant statutes without any tactical purpose, that attorney's performance is constitutionally

14

deficient.'" *In re Pers. Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 844, 479 P.3d 674 (2021) (quoting *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015)). In this case, because Bertrand's trial counsel was "required to know the law," but "was not aware that Assault in the Fourth Degree [could be] a lesser included offense" of child molestation, the trial court properly concluded that counsel's "representation on this issue was deficient." 2 VRP (Mar. 2, 2022) at 723.

However, the dispute in this case centers on *Strickland*'s prejudice prong rather than the deficient performance prong. Failure to show either prong "defeats" an ineffective assistance claim. *Strickland,* 466 U.S. at 700. Therefore, Bertrand is not entitled to a new trial unless he shows that trial counsel's deficient performance was prejudicial.

B. Prejudice based on counsel's failure to request lesser included offense instructions

Attorney mistakes or errors are bound to occur in any trial, but not every mistake will result in an "adverse effect on the defense." *Id.* at 693. As a result, in addition to deficient performance, a defendant seeking to establish ineffective assistance of counsel must show prejudice by demonstrating that counsel's error is "sufficient to undermine confidence in the outcome" of the trial. *Id.* at 694.

This is a difficult burden to meet where counsel's error is the failure to propose lesser included offense instructions. Indeed, our precedent has not been

entirely clear as to whether it is even *possible* for a defendant to show prejudice in this context. We therefore take this opportunity to clarify that there is no per se rule against showing prejudice in ineffective assistance claims based on counsel's failure to propose lesser included offense instructions. Conversely, it is also important to note that the failure to propose a lesser included instruction is not per se prejudicial. The determination of whether both prongs of the *Strickland* test are met will turn on the facts of each case. Here, we affirm that Bertrand cannot show prejudice on the record presented.

       1.    Our precedent recognizes the difficulty of satisfying *Strickland*'s prejudice prong in this context

To satisfy *Strickland*'s prejudice prong, the defendant must demonstrate "a reasonable probability that, but for counsel's [deficient performance], the result of the proceeding would have been different." *Id.* at 694. The "reasonable probability" standard is "lower than a preponderance standard," but it requires the defendant to "affirmatively prove prejudice" by showing more than a "'conceivable effect on the outcome.'" *Estes*, 188 Wn.2d at 458 (internal quotation marks omitted) (quoting *Crawford*, 159 Wn.2d at 99). Although this standard may seem relatively simple in the abstract, it can be extremely challenging to apply in practice, particularly in the context of lesser included offense instructions.

One of the challenges of applying *Strickland* in this context is that courts "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency . . . the judge or jury acted according to law." 466 U.S. at 694. As reflected in the jury instructions for Bertrand's case, well-established law requires the jury "to return a verdict of not guilty" unless the State meets its "burden of proving each element of each crime beyond a reasonable doubt." CP at 77, 72; *see State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007) ("Instructions must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt."). Thus, *Strickland* requires courts to presume that the jury found the State met its burden of proof and lawfully reached a verdict of conviction on that basis.

As a result of this presumption, a defendant asserting ineffective assistance of counsel cannot show prejudice by arguing the absence of a lesser included offense instruction caused the jury to "convict the defendant *despite having reasonable doubts*." *Henderson*, 182 Wn.2d at 736 (emphasis added). Such an argument may be persuasive where the trial court *denies* defense counsel's request for a lesser included offense instruction. *E.g.*, *id.*; *Coryell*, 197 Wn.2d at 418. However, this court concluded in *Grier* that such an argument is "misplaced" in a claim that counsel was ineffective for failing to request the instruction in the first place. 171 Wn.2d at 40.

The defendant in *Grier* was convicted of second degree murder. *Id.* at 20. This court was asked to determine whether defense counsel was ineffective for withdrawing a request for lesser included offense instructions on first and second degree manslaughter. At the time, we had not previously "addressed whether the failure to offer jury instructions on lesser included offenses may amount to ineffective assistance." *Id.* at 34-35. *Grier* "reaffirm[ed] our adherence to *Strickland*" in adjudicating such claims, but nevertheless "reject[ed] Grier's ineffective assistance claim under the *Strickland* standard." *Id.* at 32.

Addressing the first *Strickland* prong, *Grier* held that counsel did not act deficiently by deciding to forgo the lesser included offense instructions and pursue "an all or nothing strategy [as] the best approach to achieve an outright acquittal." *Id.* at 43. In doing so, we reaffirmed that "'legitimate trial strategy or tactics'" cannot establish deficient performance "given the deference afforded to decisions of defense counsel in the course of representation." *Id.* at 33 (quoting *Kyllo*, 166 Wn.2d at 863). In Grier's case, we determined that "[a]lthough risky, an all or nothing approach was at least conceivably a legitimate strategy to secure an acquittal." *Id.* at 42. Therefore, Grier could not satisfy *Strickland*'s deficient performance prong.

On the prejudice prong, this court determined that in accordance with *Strickland*, this court was required to "presume that the jury found Grier guilty

beyond a reasonable doubt of second degree murder" because we must

"'presume . . . that the judge or jury acted according to law.'" *Id.* at 41 (quoting

*Strickland*, 466 U.S. at 694). Moreover, "the proposed manslaughter instructions

instructed the jury not to consider manslaughter if convinced beyond a reasonable

doubt that Grier was guilty of second degree murder." *Id.*

Therefore, this court "presume[d] that the jury found Grier guilty beyond a

reasonable doubt of second degree murder" and that the jury would not have

considered the lesser included offense instructions, even if they had been given.

*Id.* We concluded that Grier could not show prejudice given these presumptions:

"Assuming, as this court must, that the jury would not have convicted Grier of

second degree murder unless the State had met its burden of proof, the availability

of a compromise verdict would not have changed the outcome of Grier's trial." *Id*.

at 43-44. Thus, *Grier* held that "under the standard the United States Supreme

Court set forth in *Strickland*, the withdrawal of jury instructions on lesser included

offenses did not constitute ineffective assistance." *Id.* at 45.

This court has applied *Grier* in several subsequent cases addressing

ineffective assistance of counsel claims. However, these cases have not fully

explored *Strickland*'s prejudice prong as applied to claims based on defense

counsel's failure to propose lesser included offense instructions.

19

In several cases, we applied *Grier*'s deficient performance analysis to conclude that counsel's failure to propose lesser included offense instructions was "a legitimate all or nothing strategy," such that "the first prong of the *Strickland* standard is not met." *State v. Breitung*, 173 Wn.2d 393, 398, 401, 267 P.3d 1012 (2011); *see also State v. Witherspoon*, 180 Wn.2d 875, 885-86, 329 P.3d 888 (2014) (similar). We have also applied *Grier* when analyzing ineffective assistance claims based on other types of alleged errors by defense counsel. *E.g.*, *In re Det. of Coe*, 175 Wn.2d 482, 490-91, 286 P.3d 29 (2012) (failure to offer definitional instruction).

In addition, we have extended *Grier*'s analysis to personal restraint petitions. *Personal Restraint of Crace* primarily addressed whether "a showing of prejudice under *Strickland* meet[s] the personal restraint petitioner's requirement to show actual and substantial prejudice." 174 Wn.2d at 840 (emphasis omitted). We concluded that the answer is yes: "if a personal restraint petitioner makes a successful ineffective assistance of counsel claim," no additional prejudice must be shown. *Id.* at 846-47. We then briefly analyzed the merits and denied Crace's claim, holding that he could not show prejudice from counsel's failure to propose a lesser included offense instruction. We noted that "[t]here was sufficient evidence from which a juror could conclude Crace committed this offense," and we relied on "the presumptions we recognized in *Grier*" to conclude that "it would be

20

difficult to show prejudice in such a context, and Crace has failed to do so here."
*Id.* at 847-48.

Thus, our precedent recognizes that ineffective assistance claims based on counsel's failure to propose lesser included offense instructions are subject to the two-pronged *Strickland* test. Our precedent also recognizes that such claims are difficult to prove, and we have typically denied relief. As a result, although we have not explicitly ruled out the possibility of a successful claim, some confusion has arisen as to what, precisely, our precedent requires when analyzing *Strickland*'s prejudice prong in this context.

2.      Other courts have indicated confusion as to whether our precedent precludes a showing of prejudice in this context

As indicated by the trial court proceedings in this case, discussed above, our precedent in this area has not been entirely clear. The State and the trial court appear to have interpreted *Grier* to hold that showing prejudice from counsel's failure to request a lesser included offense instruction is not merely difficult, but impossible. *See* CP at 193 (State arguing that "a Defendant cannot [show] prejudice under the second prong of the *Strickland* test for ineffective assistance of counsel if the Defendant is convicted"); 2 VRP (Mar. 2, 2022) at 734 (trial court ruling that "based upon . . . the *Grier* case, [prejudice is] a non-issue"). This interpretation is not unique to Bertrand's case; indeed, multiple appellate courts have reached similar conclusions.

21

The lack of clarity in this area of our precedent is well illustrated by the Ninth Circuit case of *Crace*, 798 F.3d 840. *Crace* addressed a federal habeas corpus petition brought by the same individual whose claim this court denied in *Personal Restraint of Crace*, noted above. As he had done in his personal restraint petition, Crace argued in his habeas corpus petition that defense counsel was ineffective for failing to request a lesser included offense instruction. The federal district court departed from this court's analysis and granted Crace's petition, and the Ninth Circuit Court of Appeals affirmed.

In its opinion, the Ninth Circuit set forth its interpretation of this court's precedent:

> The Washington Supreme Court in essence converted *Strickland*'s prejudice inquiry into a sufficiency-of-the-evidence question . . . because, under the Washington Supreme Court's approach, a defendant can only show *Strickland* prejudice when the evidence is insufficient to support the jury's verdict—a circumstance in which the defendant does not need to rely on *Strickland* at all.

*Id.* at 849. The Ninth Circuit rejected such an analysis, concluding that "[n]othing in *Strickland* . . . forbids courts from considering the possibility that a jury would have convicted on a lesser included offense if given the option to do so." *Id.* Instead, "*Strickland requires* a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense." *Id*.

The State and the trial court in this case appear to have agreed with the Ninth Circuit's interpretation, as have several Court of Appeals opinions. *See* CP at 193-

22

95; 2 VRP (Mar. 2, 2022) at 734; *State v. Lewis*, No. 34347-2-III, slip op. at 14-20 (Wash. Ct. App. Dec. 7, 2017) (unpublished), https://www.courts.wa.gov/opinions/ pdf/343472_unp.pdf; *State v. Kennon*, No. 80813-3-I, slip op. at 19-20 (Wash. Ct. App. Aug.16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/ 808133.pdf, *review denied*, 198 Wn.2d 1039 (2022).  We therefore take this opportunity to clarify our precedent.

> 3. A defendant *can* satisfy *Strickland*'s prejudice prong in this context, even if their conviction is supported by sufficient evidence

In determining whether, and how, our precedent requires clarification, the Ninth Circuit's opinion in *Crace* is highly informative.  Without question, we agree that *Strickland*'s prejudice prong *cannot* be "converted . . . into a sufficiency-of-the-evidence question," and we recognize that our reference to the sufficiency of the evidence in *Personal Restraint of Crace* may have been misleading.  *Crace*, 798 F.3d at 849.  Therefore, we now explicitly clarify that there are no special rules or heightened burdens that a defendant must satisfy to show ineffective assistance of counsel based on the failure to request lesser included offense instructions.  We reaffirm that *Strickland*'s two-pronged test provides the applicable framework, and we take this opportunity to provide additional guidance on applying the prejudice prong in this context.

At the outset, we emphasize that sufficiency of the evidence claims are subject to different standards than ineffective assistance of counsel claims.  "The

23

standard of review for determining the sufficiency of the evidence 'is whether, after *viewing the evidence most favorable to the State*, any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt.'" *State v. Hampton*, 143 Wn.2d 789, 792, 24 P.3d 1035 (2001) (emphasis added and omitted) (alteration in original) (quoting *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality opinion)). By contrast, when assessing *Strickland*'s prejudice prong, "the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. In the *Strickland* analysis, we do *not* view the evidence in the light most favorable to the State; instead, we "must consider the totality of the evidence before the judge or jury." *Id.*

When considering the totality of the evidence, courts must guard against oversimplifying the complex duties that juries must perform. Juries must consider both direct and circumstantial evidence, evaluate the credibility of witnesses, assign relative weight to the evidence, and draw reasonable inferences from the evidence presented. Thus, when a jury is presented with the choice to convict or acquit, the jury may lawfully view the evidence and draw reasonable inferences in favor of the State to reach a conviction. *See Coryell*, 197 Wn.2d at 418; *Henderson*, 182 Wn.2d at 736.

Yet, the *same jury*, if given a third option, could lawfully take a more nuanced approach, drawing some inferences in favor of the State and others in favor of the defense, to convict only on the lesser included offense. "[I]t depends on how the jury views the evidence." *Henderson*, 182 Wn.2d at 746; *cf. Coryell*, 197 Wn.2d at 418. Indeed, that is precisely how lesser included offense instructions "protect procedural fairness and substantial justice for the accused," by "assist[ing] the jury in weighing the evidence, determining witness credibility, and deciding disputed questions of fact." *Coryell*, 197 Wn.2d at 412, 414. In other words, as the Ninth Circuit aptly stated, "[L]esser-included-offense instruction[s] can affect a jury's *perception* of reasonable doubt." *Crace*, 798 F.3d at 848.

Thus, we recognize that a jury may draw different reasonable inferences from the evidence presented at trial, depending on the instructions given. This does not diminish *Strickland*'s presumption "that the judge or jury acted according to law," nor does it improperly assume that the jury acted with "arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland*, 466 U.S. at 694-95. To the contrary, recognizing the nuanced and varying inferences that might be drawn in any given case presumes that the jury carefully and thoughtfully follows *all* of its instructions to weigh the evidence, judge the credibility of witness, and draw reasonable inferences to reach a verdict. In doing so, we assume "that the

25

decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695.

This approach is well supported, not only by *Strickland* and the Ninth Circuit's opinion in *Crace* but by the reasoned opinions of several other jurisdictions. For instance, the Third Circuit Court of Appeals has recognized that the failure to request a lesser included offense instruction may expose a defendant to a "substantial risk" of prejudice, which cannot be resolved by "merely not[ing] the sufficiency of the evidence." *Breakiron v. Horn*, 642 F.3d 126, 140 (3d Cir. 2011) (emphasis omitted). The Supreme Courts of Delaware, Tennessee, and Missouri have similarly concluded that *Strickland* does not prohibit a defendant from showing that they were prejudiced in this context. *See Baynum v. State*, 211 A.3d 1075, 1085 (Del. 2019); *Moore v. State*, 485 S.W.3d 411, 422 (Tenn. 2016); *McNeal v. State*, 412 S.W.3d 886, 892 (Mo. 2013).

We agree with the careful analysis in these opinions. Evaluating prejudice from counsel's failure to request a lesser included offense instruction requires "'conduct[ing] a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury.'" *Moore*, 485 S.W.3d at 422 (quoting *State v. Allen*, 60 S.W.3d 181, 191 (Tenn. 2002)). Thus, a "jury's decision [to convict on the higher degree offense] may make it difficult for a post-conviction movant to prove prejudice, but it does

not necessarily preclude a finding of prejudice as a matter of law." *McNeal*, 412

S.W.3d at 892.

In sum, we reaffirm that ineffective assistance claims based on counsel's

failure to request lesser included offense instructions are subject to the same

*Strickland* analysis that applies to all ineffective assistance claims. Although it is

difficult to satisfy the two-pronged *Strickland* test in this context, we clarify that

*Strickland*'s prejudice prong is not a sufficiency of the evidence test and that there

are no per se rules preventing the defendant from meeting their *Strickland* burden

in an appropriate case.

C.     Bertrand does not meet his burden to show prejudice in this case

Applying the foregoing standards to this case, we affirm the trial court in

result. We review a trial court's decision on a motion for a new trial for abuse of

discretion or "erroneous interpretations of the law." *State v. Jackman*, 113 Wn.2d

772, 777, 783 P.2d 580 (1989).

As discussed above, the trial court ruled that Bertrand's trial counsel was

deficient in failing to know that fourth degree assault could be a lesser included

offense of child molestation, thus satisfying *Strickland*'s first prong. However, the

trial court ruled that Bertrand could not satisfy *Strickland*'s prejudice prong in light

of the jury's guilty verdicts and denied his motion for a new trial. Although we

clarify that the jury's guilty verdicts do *not* automatically preclude a showing of

prejudice based on counsel's failure to propose lesser included offense instructions, Bertrand cannot meet his burden of showing prejudice on the record presented. While Bertrand's counsel was deficient for failing to know the law, Bertrand cannot show this deficiency caused him prejudice because, even if counsel had requested the lesser included offense instructions, there is no factual basis in the record to support fourth degree assault instructions.

As discussed above, to prevail on his ineffective assistance of counsel claim, Bertrand must show he was entitled to the fourth degree assault instructions pursuant to *Workman*'s two-pronged test. *Avington*, 2 Wn.3d at 258. For purposes of *Workman*'s legal prong, this court's precedent holds that fourth degree assault can be a lesser included offense of child molestation. *Stevens*, 158 Wn.2d at 311. Fourth degree assault is "an unlawful touching with criminal intent" that does "not amount[ ] to assault in the first, second, or third degree, nor a custodial assault." *Id.* at 311, 310 (citing RCW 9A.36.041(1)). Therefore, "child molestation necessarily includes the elements of fourth degree assault," plus additional elements requiring "sexual contact" and a child victim. *Id.* at 311.[3] Bertrand's counsel was deficient in failing to know this law.

---

[3] The State argues for the first time on appeal that fourth degree assault is not a lesser included offense of child molestation and asks this court to disavow *Stevens*. We decline to reach the State's argument on this point. *See* RAP 2.5(a).

However, counsel's deficient performance did not prejudice Bertrand because there was no evidence presented at trial that would have supported fourth degree assault instructions, as required by *Workman*'s factual prong. A lesser included offense instruction is appropriate only if there is "'some evidence . . . presented—from whatever source, including cross-examination—that affirmatively establishes the defendant's theory.'" *Avington*, 2 Wn.3d at 259 (quoting *Coryell*, 197 Wn.2d at 415). There was *no* evidence presented at trial that showed Bertrand committed fourth degree assault by unlawfully touching either girl with criminal, but not sexual, intent. Instead, both girls testified to unwanted, sexual contacts. C.A. testified Bertrand "put his hand down [her] pants . . . [o]nto [her] butt" and also touched her upper back and "by [her] breasts." 1 VRP (Dec. 9, 2021) at 343-44. Similarly, S.T. testified Bertrand touched "the front of [her] chest" while they watched movies on the couch together, which made her feel "[u]ncomfortable." *Id*. at 390-91. Neither girl testified to unlawful but nonsexual touchings. Therefore, their testimony does not support Bertrand's postverdict theory of the case that he committed assault, but not child molestation.

Moreover, Bertrand's postverdict theory of the case directly contradicts the "all or nothing" defense strategy he employed at trial, mainly by attempting to discredit the girls' testimony as unreliable. Bertrand's trial counsel argued that *no* unlawful touching occurred based on (1) the supposed inconsistencies in C.A. and

29

S.T.'s testimonies and (2) the touchings as described by both girls, which counsel equated to children "crawling over" and "wrestling with" their dad. 2 VRP (Dec. 14, 2021) at 588.

Thus, at trial, Bertrand did not argue "in essence that the State had only proved Bertrand committed [fourth degree assault]," and the evidence at trial does not support his postverdict theory that *unlawful but nonsexual contacts did in fact occur*. *Contra* dissent at 11. Instead, Bertrand argued that any contacts between him and the girls, if they had occurred, were lawful. As a result, the evidence at trial did not support the factual prong of the *Workman* test.

In sum, Bertrand cannot show he was prejudiced by counsel's failure to know that fourth degree assault can be a lesser included offense of child molestation because there is no evidence in the record to support lesser included offense instructions on fourth degree assault.[4] Therefore, Bertrand fails to show a reasonable probability that the outcome of trial would have been different had counsel known the law and requested the fourth degree assault instructions. Contrary to the dissenting opinion, prejudice is not measured by the ultimate

---

[4] The trial court ruled that Bertrand would have "most likely" been entitled to lesser included offense instructions on fourth degree assault if he had requested them, indicating that Bertrand had satisfied *Workman*'s factual prong. 2 VRP (Mar. 2, 2022) at 723. But this would have been an abuse of discretion because, as discussed above, there was no evidence at trial that supported fourth degree assault instructions. *See Avington*, 2 Wn.3d at 260 (trial court's decision on lesser included offense instruction "is reviewed for abuse of discretion if it 'was based on a factual determination'" (internal quotation marks omitted) (quoting *Coryell*, 187 Wn.2d at 405)).

sanction or degree of punishment. Dissent at 3.  The trial court did not abuse its discretion in denying Bertrand's motion for a new trial.

CONCLUSION

We reaffirm that *Strickland* sets forth the correct standard for analyzing ineffective assistance of counsel claims.  We further clarify that in accordance with *Strickland*, a defendant can show ineffective assistance based on counsel's failure to propose a lesser included offense instruction, even if there is sufficient evidence to support the jury's verdict.  We recognize this showing is difficult to make when the defendant is convicted of the charged offense given *Strickland*'s mandatory presumptions of reliability in the jury's verdict.  Nevertheless, there is no per se rule precluding a defendant from satisfying the two-pronged *Strickland* test based on counsel's failure to propose a lesser included offense instruction.

In this case, we affirm the trial court in result because Bertrand was not prejudiced by his counsel's failure to propose the fourth degree assault instructions.  We remand the remaining issues to the Court of Appeals for further proceedings, without prejudice to either party.[5]

---

[5] Bertrand's opening brief raises additional issues beyond the lesser included offense instruction issue raised in his statement of grounds for direct review.  At oral argument, both parties agreed that if we did not reverse Bertrand's convictions based on the lesser included offense instruction issue, the remaining issues should be remanded to the Court of Appeals for further consideration.  Wash. Sup. Ct. oral arg., *State v. Bertrand*, No. 100953-4 (Oct. 12, 2023), at 37 min., 43 sec.; 44 min., 9 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2023101138/.


Yu, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

*State v. Bertrand*, No. 100953-4
Whitener, J., dissenting

No. 100953-4

WHITENER, J. (dissenting)— "How much more prejudice do we need?"[1]
When a defendant seeks relief from the consequences of ineffective assistance of
counsel, they must satisfy a two-part analysis under *Strickland v. Washington*, 466
U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). I agree with the majority that
Andrew Wesley Bertrand has satisfied the first step of the *Strickland* analysis, as his
counsel's performance was deficient. I part with the majority on step two of the
*Strickland* analysis. I would find that Bertrand has shown that he was prejudiced by
defense counsel's deficient performance, thus, also satisfying step two of the
*Strickland* analysis.

Bertrand was charged with child molestation in the first degree, of which
assault in the fourth degree is a lesser included offense. *State v. Stevens*, 158 Wn.2d
304, 312, 143 P.3d 817 (2006). A distinguishing element between the two offenses
is sexual contact, where the touching was done for the purpose of sexual
gratification. 11 WASHINGTON PRACTICE: PATTERN JURY INSTRUCTIONS: CRIMINAL
45.07, at 1101 (5th ed. 2021). Defense counsel's trial strategy involved an argument

---

[1] The question Justice Chambers asked the majority in his dissenting opinion more than a decade ago. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 850, 280 P.3d 1102 (2012).

1

that the State failed to prove the element of sexual contact because there was no evidence of sexual gratification. 2 Verbatim Rep. of Digitally-Recorded Proc. (VRP) at 587-88. Yet, despite defense counsel arguing in essence that the State had proved only assault in the fourth degree, the defense never requested a jury instruction for assault in the fourth degree. Failure to request the instruction was not the result of an "all or nothing" trial strategy but, rather, was because defense counsel did not know that assault in the fourth degree was a lesser included offense. Clerk's Papers (CP) at 155-56. As a result, defense counsel never discussed the possibility of a lesser included offense instruction with Bertrand, and defense counsel indicated had they known it was a lesser included offense they would have requested the instruction. CP at 155-56, 158. In addition, the trial court stated had defense counsel asked for the instruction that the court would have likely included the instruction for assault in the fourth degree. 2 VRP at 722-23.

Under the facts of this case, it cannot be said that Bertrand received effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution. The right to effective assistance of counsel goes to the fundamental fairness of the criminal legal system as a whole. For the accused, it is perhaps the most important

constitutional right, as an effective counsel helps a defendant assert all other constitutional rights.

The ramification of defense counsel's failure to request the lesser included offense instruction to Bertrand is enormous. Between the legal consequences of an assault in the fourth degree conviction, a gross misdemeanor with a maximum imprisonment term of 364 days, and a conviction for child molestation in the first degree, a class A felony sex offense with a maximum imprisonment term of life, exists one of the largest gaps in Washington's sentencing system. RCW 9A.20.021. The majority's interpretation of *Strickland*, despite their insistence to the contrary, continues to render the guarantee of effective assistance of counsel at a critical stage of a criminal proceeding practically meaningless. Therefore, I respectfully dissent.

ANALYSIS

*Strickland*, the seminal case for ineffective assistance of counsel claims under the Sixth Amendment of the United States Constitution, requires a court to consider such claims with a two part analysis. 466 U.S. at 687. First, the defendant must establish that their "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Second, the defendant must establish that they were "prejudiced" by the "deficient performance." *Id*. at 687. We have adopted *Strickland*'s analysis for determining whether a defendant has received ineffective

assistance of counsel. *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001). However, when considering an ineffective assistance of counsel claim based on a counsel's failure to request a jury instruction, a court must first consider whether the defendant was entitled to the instruction prior to analyzing *Strickland*'s two steps. We described this specific analysis in *Cienfuegos*.

> Analytically, Cienfuegos presents three questions. First, we must determine whether Cienfuegos was entitled to a diminished capacity instruction. Second, we must decide whether it was ineffective assistance of counsel per se not to have requested the instruction. Finally, we must decide whether ineffective assistance of counsel prejudiced his defense under the Strickland standard.

*Id*. at 227. Answering whether the defendant was entitled to the instruction first is a perfect starting point as its result informs each of *Strickland*'s steps. Counsel's performance is unlikely to be "unreasonable" in their failure to request the instruction if the defendant was never entitled to the instruction, nor is the defendant likely to be "prejudiced" by that performance if the defendant was never entitled to the instruction.[2]

---

[2] Without reason, the majority departs from *Cienfuegos*'s three-step analysis. The majority instead creates a new analytical framework, placing the question of whether Bertrand was entitled to the instruction within *Strickland*'s second step, the "prejudice" step. Majority at 27-29. In doing so, the majority muddies the analysis of *Strickland*'s first step and, most importantly, rather than clarifying the "prejudice" step, it further confuses the already problematic analysis of the "prejudice" step.

I

Whether Bertrand was entitled to the lesser included offense instruction is answered under the *Workman* test, which itself is a two-step analysis. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

First, each element of the lesser offense must be necessary elements of the offense charged—the legal prong. *Id*. at 447-48; *State v. Schierman*, 192 Wn.2d 577, 651, 438 P.3d 1063 (2018) (reviewed de novo). Bertrand satisfies the first step of the *Workman* test, as all the elements of assault in the fourth degree are necessary elements of child molestation in the first degree. *Stevens*, 158 Wn.2d at 311-12.

Second, the evidence must support an inference that the lesser crime was committed—the factual prong. *Workman*, 90 Wn.2d at 448; *Schierman*, 192 Wn.2d at 651 (reviewed for abuse of discretion). Bertrand satisfies the second step of the *Workman* test, as the trial court found that it would have "most likely … adopted" the assault in the fourth degree instruction. 2 VRP at 722-23. The trial court did not abuse its discretion when it made this determination as Bertrand's counsel argued both in opening and closing that the testimonies would not and did not sufficiently establish that Bertrand was sexually gratified by the touchings. 1 VRP at 332; 2 VRP at 587-88. This was not lost on the trial court, which found counsel "emphasized the lack of evidence related to sexual gratification which is used to define the element

of sexual contact and necessary to prove Child Molestation in the First Degree." *Id.*at

723. After hearing all the arguments and testimony, the trial court found that "[h]ad

a lesser included charge of Assault in the Fourth Degree been proposed by the

Defendant's trial attorney, the Court most likely would have adopted it." 2 VRP at

722-23.

Bertrand was eligible for an assault in the fourth degree instruction, which

allows us to move on to the two steps of the *Strickland* analysis. *Cienfuegos*, 144

Wn.2d at 227.

II

*Strickland*'s first step requires a showing that "counsel's performance was

deficient," as it fell below an objective standard of reasonableness. *Strickland*, 466

U.S. at 687. When counsel's conduct can be characterized as legitimate trial strategy

or tactics, their performance is not deficient. *State v. Kyllo*, 166 Wn.2d 856, 863, 215

P.3d 177 (2009). We have previously held that effective assistance includes the duty

to research relevant statutes. *State v. Estes*, 188 Wn.2d 450, 460, 395 P.3d 1045

(2017); *In re Pers. Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 844, 479 P.3d 674

(2021). Adequate preparation by counsel requires legal research relevant to the

proceeding and keeping abreast of changes in the law. AM. BAR ASS'N, STANDARDS

FOR CRIMINAL JUSTICE: DEFENSE FUNCTION std. 4-9.6 (4th ed. 2017); RPC 1.1 cmt.

8.[3]    The record shows that counsel's failure to request the instruction was not strategy, it was the result of ignorance, as he was not familiar with this court's holding in *Stevens*. 158 Wn.2d at 312; CP at 156. The majority spends a lot of time discussing Bertrand's "all or nothing" defense strategy he employed at trial. Majority at 29. However, the majority's "all or nothing strategy" argument fails because Bertrand's counsel did not *know* that an assault in the fourth degree is a lesser included crime of child molestation in the first degree. It cannot be said that counsel pursued a legitimate trial strategy when he failed to request a lesser included jury instruction because he did not know such a strategy existed. The trial court correctly held that Bertrand's counsel was "deficient." 2 VRP at 723. Counsel's failure to request the lesser included jury instruction was not a choice of trial strategy, it was a failure to research the relevant statutes that is unduly problematic given counsel "emphasized the lack of evidence related to sexual gratification." CP at 156; 2 VRP at 723. Bertrand successfully established *Strickland*'s first step.

III

*Strickland*'s second step requires a showing that "the deficient performance prejudiced the defense" where there exists a reasonable probability that, but for

---

[3] Prevailing norms and guidelines promulgated by professional organizations are not necessarily dispositive in determining what is reasonable conduct for defense counsel, but they provide guidance. *State v. Grier*, 171 Wn.2d 17, 30 n.4, 246 P.3d 1260 (2011); *Strickland*, 466 U.S. at 688.

counsel's unprofessional error, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. at 694.

When considering the second step, *Strickland* requires courts to presume that the decision maker, whether jury or judge, "acted according to law." *Id*. In the following passage, the *Strickland* court elaborated on what this presumption means:

> An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

*Id*. at 695. In other words, when considering the second step of *Strickland*, the prejudice step, the court must presume that the decision made by a jury or judge was not the result of some "freak acts of 'lawless[ness]'… that are outside the ordinary course of criminal justice." *Crace v. Herzog*, 798 F.3d 840, 847 (9th Cir. 2015) (alteration in original) (quoting *Strickland*, 466 U.S. at 695).

This court first considered *Strickland* in the context of counsel's failure to request a lesser included offense instruction in *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011). Grier was charged with murder in the second degree, and though

her counsel originally proposed introducing instructions for the lesser included offenses of manslaughter in the first and second degree, Grier and her counsel ultimately decided against it and withdrew the instruction request. *Id*. at 26-27. Grier was convicted of murder in the second degree and appealed her conviction on ineffective assistance of counsel grounds due to her counsel's failure to request the lesser included offenses instructions. In its decision, this court functionally turned *Strickland*'s prejudice step into a per se rule within the context of counsel's failure to request a lesser included offense instruction:

> Grier [cannot] establish prejudice under the second prong of *Strickland*. Assuming, as this court must, that the jury would not have convicted Grier of second degree murder unless the State had met its burden of proof, the availability of a compromise verdict would not have changed the outcome of Grier's trial.

*Grier*, 177 Wn.2d at 43-44. In other words, if the defendant was convicted of the greater offense at trial, the defendant cannot establish that the availability of a lesser included offense instruction creates a reasonable probability for a different outcome because the jury was instructed on the State's burden, followed the instruction, and convicted the defendant of the greater offense. *Grier*'s prejudice analysis is problematic for a number of reasons.

First, it rendered a defendant's ability to obtain relief when their counsel was ineffective at the jury instruction stage of trial meaningless. A defendant would raise

this claim only because they were convicted of the greater offense, which functionally prevents them from satisfying the prejudice step under *Grier*.

Second, it ignored much of *Strickland*'s explanation of what the "acted according to law" presumption means. *Strickland* asked courts to presume that a jury's or judge's decision was not the result of some "freak acts of 'lawless[ness]'… that are outside the ordinary course of criminal justice." *Crace*, 798 F.3d at 847 (alteration in original) (quoting *Strickland*, 466 U.S. at 695). Nothing in *Strickland*'s "acted according to law" presumption prohibits the court from presuming the possibility that given a third option, a jury could make a different decision.

Third, it ignored what the introduction of a lesser included offense could do to the jury's perception of reasonable doubt. *Id.* at 848. A jury that convicts on the greater offense when only presented with the greater offense may convict only on the lesser offense if given the opportunity to do so because the lesser offense is a better fit with the evidence presented. That decision is not the result of "arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland*, 466 U.S. at 695. It is still the result of a decision-making process that "reasonably, conscientiously, and impartially appl[ied] the standards that govern the decision." *Id*. The possibility of a jury choosing a "third option" of a lesser included offense when given the opportunity to does not mean it ignored the instruction to hold the State to its burden

of proof; it simply means the "third option" changed the jury's *perception* of reasonable doubt and its levels of nuance. *See Crace*, 798 F.3d at 847.

Fourth, *Strickland*'s "acted according to the law" presumption *requires* courts to presume the possibility that given a third option, a jury could make a different decision. The prejudice step of *Strickland* is satisfied only when there is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. In *Henderson*, this court held that giving juries the option of lesser included offenses is "crucial to the integrity of our criminal justice system" as it minimizes the risk of a jury voting to convict when presented with one offense, despite an element being in doubt, because "'the defendant is plainly guilty of some offense.'" *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015) (emphasis omitted) (quoting *Keeble v. United States*, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973)). This is true regardless of whether the omission of the lesser included offense instruction occurred because a judge wrongfully denied its request or an ineffective counsel wrongfully omitted its request. If giving the jury a lesser included offense instruction is "crucial to the integrity" of the system, the failure to do so would clearly "undermine confidence in the outcome."

Finally, even if one believed the "acted according to law" presumption did not include the possibility that given a third option, a jury could make a different

decision, this presumption is not an irrebuttable presumption. Counsel's failure to request a lesser included offense could rebut that presumption. Evidence of the actual decision process, if part of the record, can be used in the prejudice analysis. *Strickland*, 466 U.S. at 695. When a record shows counsel failed to request a lesser included offense instruction that the defendant was lawfully entitled to, and it was not the result of strategy, then the "acted according to law" presumption is rebutted. A jury in this scenario did not "act according to law" in their decision-making process because they did not receive *all the laws they were lawfully entitled to be instructed on*.

This court maintained *Grier*'s problematic application of *Strickland*'s prejudice analysis a year later in *In re Personal Restraint of Crace*, 174 Wn.2d 835, 280 P.3d 1102 (2012).

> With respect to prejudice, we noted in *Grier* that the court must assume "that the jury would not have convicted [the defendant] unless the State had met its burden of proof." And, we must assume that "the availability of a compromise verdict would not have changed the outcome of [the] trial."

*Id.* at 847 (alterations in original) (citation omitted) (quoting *Grier*, 177 Wn.2d at 43-44). Appeals courts have continued to apply *Grier*'s analysis of the prejudice step. In *Lewis*, Division Three, bound by *Grier*, applied this court's problematic application of *Strickland*'s prejudice step, while acknowledging this court's strange

divergence when applying *Strickland* in the context of counsel's failure to request

lesser included offense instructions:

> The Washington Supreme Court, in *State v. Grier*, may have ignored this general standard of prejudice, for purposes of an ineffective assistance of counsel analysis, and established a greater burden for the accused to carry in our context of the failure to seek a lesser included offense jury instruction…. [I]mportantly, the high court adopted the reasoning that, since the jury found the defendant guilty of the greater crime beyond a reasonable doubt, the jury, if given an opportunity, would not have convicted of the lesser crime. The reviewing court must assume that the jury will act according to the law and convict only if it finds guilt beyond a reasonable doubt. Therefore, according to *Grier*, the defendant does not establish prejudice if convicted of the greater crime because he would have otherwise been convicted even if the trial court afforded the jury the opportunity to convict on a lower charge."

*State v. Lewis*, No. 34347-2-III, slip. op. at 14-16 (Wash. Ct. App. Dec. 7, 2017)

(unpublished)                          (citation                          omitted),

https:www.courts.wa.gov/opinions/pdf/343472_unp.pdf.

Despite lower courts quoting *Grier*'s problematic application of *Strickland*'s

prejudice step almost word-for-word, the majority writes that *Grier* has been

misinterpreted by lower courts. Majority at 21. The majority now seeks to clarify

how prejudice is analyzed within the context of a counsel's failure to request lesser

included offense instructions. The majority's clarification is that there is no per se

rule and no sufficiency of the evidence burden for defendants like Bertrand to satisfy

but, rather, that the prejudice step is simply "difficult," but not "impossible."

13

Majority at 1-2, 21, 27. Regrettably when considering prejudice to Bertrand, the majority maintains the same problematic application of *Strickland*'s prejudice analysis, and the "difficult" burden remains functionally impossible.

> One of the challenges of applying *Strickland* in this context is that courts "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency . . . the judge or jury acted according to law." As reflected in the jury instructions for Bertrand's case, well-established law requires the jury "to return a verdict of not guilty" unless the State meets its "burden of proving each element of each crime beyond a reasonable doubt." … Thus, *Strickland requires courts to presume that the jury found the State met its burden of proof and lawfully reached a verdict of conviction on that basis*.

Majority at 17 (first alteration in original) (emphasis added) (citation omitted) (quoting court papers). The majority holds that the trial court misinterpreted *Grier*'s analysis of the prejudice step and affirms it in "result" only. Majority at 21, 27. Interestingly, what the majority holds as a misinterpretation was a near recitation of what the majority believes is *required* of courts under *Grier* when analyzing *Strickland*'s prejudice step. According to the trial court,

> [t]he analysis relies upon the concept that the jury would have not convicted a defendant of a greater charge unless the State had met its burden of proof on all the elements.

2 VRP at 724. The majority's "additional guidance and clarification" of *Strickland*'s prejudice step is superficial as it maintains *Grier*'s problematic analysis. Majority at 11. Until the majority finally overturns *Grier*'s "patently unreasonable application of *Strickland*" and its interpretation of *Strickland*'s "acted according to law"

14

presumption, lower courts will continue to "misinterpret" *Grier*'s application of *Strickland*'s prejudice step, despite applying it nearly word-for-word. *Crace*, 798 F.3d at 847. Today, under an ineffective assistance of counsel claim, the *Strickland* prejudice analysis continues to be functionally impossible to obtain relief for those whose counsel failed to request lesser included offense instructions.

Here, counsel's deficient performance prejudiced Bertrand. "[T]he deficient performance [of counsel] prejudiced the defense" where there exists a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

Bertrand is before this court because those tasked with making the ultimate determination as to whether Bertrand committed assault in the fourth degree, child molestation in the first degree, both crimes, or none at all were denied the opportunity because Bertrand's counsel was ineffective. The remedy sought here is to allow jurors to make that determination with all of the instructions Bertrand was entitled to, which includes the lesser included offense instruction of assault in the fourth degree.

The facts here indicate that the strength of the State's case relied primarily on the testimonies of C.A. and S.T. There exists a gap between the testimony of both C.A. and S.T., as S.T. did not allege that Bertrand touched her underneath her clothes. 1 VRP at 342, 391. In contrast, Bertrand's counsel argued significantly about C.A.'s credibility issues. In addition, defense counsel argued that the State's evidence was deficient when it came to the element of sexual contact, indicating it was not clear beyond a reasonable doubt that Bertrand was sexually gratified by the touchings. 2 VRP at 587-594, 604. Despite Bertrand's counsel arguing in essence that the State had proved only that Bertrand committed the crime of assault in the fourth degree, his counsel did not know assault in the fourth degree was a lesser included offense of child molestation in the first degree, and ultimately his counsel never requested an instruction for assault in the fourth degree. His counsel's failure to request the lesser included offense instruction created a reasonable probability that the jury could have arrived at a different conclusion. The jury *could have* concluded that the touchings did in fact occur, but that they amounted to an assault in the fourth degree rather than child molestation in the first degree. Giving the jury a lesser included offense instruction is "crucial to the integrity" of the system, therefore the failure to do so "undermine[s] confidence in the outcome." *Henderson*, 182 Wn.2d at 736; *Strickland*, 466 U.S. at 694.

I would find Bertrand has satisfied both steps of the *Strickland* analysis. His counsel was deficient in their performance when they failed to request the lesser included offense instruction, and there exists a reasonable probability that but for the failure to request the assault in the fourth degree instruction, the result of the proceeding would have been different. Accordingly, I would vacate Bertrand's convictions and remand for a new trial.

_____
Whitener, J.

*State v. Bertrand (Andrew Wesley)*, No. 100953-4
(Gordon McCloud, J., concurring in result of dissent)


No. 100953-4

GORDON McCLOUD, J. (concurring in result of dissent)— I agree with

both the majority and the dissent that a criminal defense lawyer's failure to request

a legally available, factually supported, and strategically appropriate jury

instruction on a lesser included offense that the lawyer did not know about

constitutes deficient performance. Majority at 16; dissent at 1.

I also agree with both the majority and the dissent that this court's previous

decisions in *State v. Grier*, 171 Wn.2d 17, 38, 246 P.3d 1260 (2011), and *In re*

*Personal Restraint of Crace*, 174 Wn.2d 835, 848, 280 P.3d 1102 (2012), failed to

recognize or appropriately explain the significant prejudice that such deficient

performance can cause.  Majority at 17-21; dissent at 9-11.

But I disagree with the majority's conclusion that Andrew Wesley Bertrand

failed to prove such prejudice in this case—it fails to fully appreciate the

applicable federal constitutional standard for determining prejudice. Majority at

27-31. And I disagree with the dissent's strict step-by-step approach to the

*Strickland*[1] analysis, though I agree with its conclusion that Bertrand did show

prejudice in this case. Dissent at 3-5, 11-12.

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984).

1

I therefore write separately to concur in the result reached by the dissent.

ANALYSIS

As both the majority and the dissent assert, a criminal defendant is entitled to effective assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland*, 466 U.S. at 685-86; *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987).

And as both the majority and the dissent assert, a criminal defendant proves ineffective assistance of counsel by showing two things: (1) that their lawyer's performance was deficient and (2) that the defendant suffered prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *Thomas*, 109 Wn.2d at 225-26 (citing *Strickland*, 466 U.S. at 687)).

I.      The Two Prongs of the *Strickland* Test Can Be Applied in Any Order

But the defendant need not show those two things in any particular order, and a reviewing court need not analyze those two things in any particular order. *Strickland*, 466 U.S. at 697. As the Supreme Court stated in *Strickland*, "Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."

*Id.* Specifically, a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

I therefore agree with the majority's view that the *Strickland* test contains two independent "prongs"; I disagree with the dissent's view that this court must apply the *Strickland* analysis by taking sequential "steps." Majority at 9-11; dissent at 1, 3-5.

II.     The Majority and Dissent Both Correctly Conclude That Failure To Request a Lesser Included Offense Instruction in This Case Due to Failure To Research the Law Constitutes Deficient Performance

Nevertheless, the majority and the dissent—as well as the trial court—all conclude that trial counsel's failure to request a lesser included offense instruction in this case, based on his failure to adequately research the law, constitutes deficient performance. This is certainly correct, and I believe it is the easy question in this case.

A defendant shows deficient performance if they show that the lawyer's performance fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997).

In this case, Bertrand showed—on appeal—that assault in the fourth degree is a lesser included offense of child molestation in the first degree under the applicable "legal" test. Dissent at 1 (citing *State v. Stevens*, 158 Wn.2d 304, 312,

143 P.3d 817 (2006)), 10-11. He also showed—on appeal—that the record supported such a defense under the applicable "factual" test: only one complainant provided direct testimony about the "sexual contact" element of the crime, defense trial counsel sought to undermine both complainants' credibility based on their inconsistencies and memory gaps, and defense trial counsel argued that the State therefore failed to prove the "sexual contact" or "sexual gratification" element of the crime. Dissent at 10-11, 16 (citing 1 Verbatim Rep. of Digitally-Recorded Proc. (VRP) (Dec. 9, 2021) at 342, 391; 2 VRP (Dec. 14, 2021) at 587-94, 604).

In addition, Bertrand showed that this was a strategically appropriate instruction because the defense theory of the case was that (1) the complainants' testimony was unreliable and (2) even if the jury believed the complainants' testimony was reliable, it did not prove the necessary element of "sexual contact" or "sexual gratification." Dissent at 11 (quoting *Strickland*, 466 U.S. at 694; *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015)).

The majority seems to question whether it should consider both parts of the defense theory of the case when evaluating *Strickland*'s deficient performance prong because those two parts of the defense theory of the case seem inconsistent. Majority at 7, 29-30. But a criminal defendant is certainly entitled to raise two such possibly factually inconsistent defenses and to have the jury consider both of them. *Mathews v. United States*, 485 U.S. 58, 64-66, 108 S. Ct. 883, 99 L. Ed. 2d 54

4

(1988). Following this rule, Bertrand showed that his theory of the case—that the State failed to prove child molestation because one complainant failed to discuss "sexual contact" and because both complainants were unreliable—was fully supported by the record.

Of critical importance to this deficient performance analysis, Bertrand also showed that his lawyer admitted that he *did not know and did not do the research to find out* that he could have obtained a jury instruction on a lesser offense that lacked the "sexual contact" element. Clerk's Papers (CP) at 155-56 (affidavit of prior defense counsel). This proves deficient performance under both state and federal constitutional law: "Where an attorney unreasonably fails to research or apply relevant [law] without any tactical purpose, that attorney's performance is constitutionally deficient." *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015) (citing *State v. Kyllo,* 166 Wn.2d 856, 865-69, 215 P.3d 177 (2009); *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999)); *see also Hinton v. Alabama*, 571 U.S. 263, 274, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014) (per curiam) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").

Bertrand thus clearly shows that defense trial counsel's performance was deficient.

III.    Defense Trial Counsel's Uninformed Failure To Request a Jury Instruction Supporting His Theories of the Case—Even If They Were Partially Inconsistent—Caused Prejudice under the Proper, "Less Than Preponderance" Standard

The real question in this case comes down to prejudice. A defendant shows prejudice if they can demonstrate that there is a "reasonable probability" that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *McFarland*, 127 Wn.2d at 337 (citing *Thomas*, 109 Wn.2d at 226).

The prejudice standard is not as hard to meet as the majority claims. The defendant need not prove prejudice beyond a reasonable doubt or even by the preponderance of evidence standard. *Strickland*, 466 U.S. at 694. As both this court and the United States Supreme Court have explained, and as the majority acknowledges (majority at 10), a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" but less than a preponderance of the evidence standard. *Id.* ("The result of a proceeding can be rendered unreliable, and hence . . . unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."); *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) ("'reasonable probability' is *lower than a preponderance standard*" (emphasis added) (citing *Strickland*, 466 U.S. at 694; *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015))).

6

Bertrand showed just such prejudice from his trial lawyer's deficient failure to request a lesser included offense instruction in this case. He showed that his lawyer made two arguments to the jury: that the complainants were unreliable and that even if they were reliable, their testimony showed horseplay, not sexual contact. 2 VRP (Dec. 14, 2021) at 587-594, 604. He showed that those arguments found support in the testimony. 1 VRP (Dec. 9, 2021) at 342, 391; 2 VRP (Dec. 14, 2021) at 587-594, 604. And he showed that despite the lawyer's partial theory of the case—that the State failed to prove sexual contact—the lawyer did not provide the jury with an instruction about what it could do (other than completely acquit) if it agreed with the lawyer's argument. 2 VRP (Dec. 14, 2021) at 587-594, 604.

That suffices to prove prejudice under *Strickland*. Bertrand need not show that the jury necessarily would have acquitted him of the greater offenses and convicted him of only the lesser offense if his lawyer had given the jury that choice. *Strickland*, 466 U.S. at 694. But it is certainly likely from this record that the jury would have done just that, at least as to S.T. —the complainant who testified that Bertrand touched her on top of her clothes, not underneath.[2] As described above, under both United States Supreme Court precedent and this court's precedent, the defendant need not show prejudice beyond a reasonable

---

[2] The jury was instructed that it must decide each count separately and that its verdict on one count should not control its verdict on the other count. CP at 74 (jury instruction 5).

doubt or even by a preponderance. *Strickland*, 466 U.S. 668; *Estes*, 188 Wn.2d

450.[3] Instead, the defendant must show a reasonable probability, *by less than a*

*preponderance of the evidence*, that the outcome would have been different.

The majority comes to a different conclusion about prejudice.  But both the

majority and the dissent seem to agree that it is time to disavow our language in

*Grier* and *Crace* about how to evaluate prejudice.  In those cases, this court ruled

that, for all practical purposes, a convicted defendant could not show prejudice

from trial counsel's nonstrategic failure to ask for an available, legally appropriate,

and factually supported instruction on a lesser included offense. In this case, both

---

[3] The *Strickland* court went to great lengths to emphasize that this demands less than the preponderance of evidence standard; it explained:

> On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. This outcome-determinative standard has several strengths. It defines the relevant inquiry in a way familiar to courts, though the inquiry, as is inevitable, is anything but precise. The standard also reflects the profound importance of finality in criminal proceedings. Moreover, it comports with the widely used standard for assessing motions for new trial based on newly discovered evidence. *Nevertheless, the standard is not quite appropriate.*

> …An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

466 U.S. at 693-94 (emphasis added) (citation omitted).

the majority and the dissent now acknowledge that a criminal defendant can show prejudice from such an error. That is the basic holding of today's case.

CONCLUSION

I depart from the majority because I believe the record shows that Bertrand has proved prejudice in this case under the proper, federal, less-than-preponderance-of-evidence standard. I depart from the dissent because I believe that *Strickland*'s two-part test need not be applied in the strict, step-by-step manner the dissent lays out.

I therefore respectfully concur in the result reached by dissent.

_____
Gordon McCloud, J.